## In re BAUGHMAN.

(District Court, D. South Carolina. July 14, 1908.)

BANKRUPTCY—COMMISSIONS OF REFEREE AND TRUSTEE—PROCEEDS OF MORTGAGED PROPERTY.

> Property of a bankrupt was subject to a chattel mortgage for less than $1,000. The mortgagee applied to the referee for delivery of the property to him, whereupon the trustee filed a petition for an order to sell the property, showing that it was appraised at $1,585. No objection being made by the mortgagee after notice to him, such order was made, and the property was sold by the trustee at public auction for $875, which was less than the mortgage debt. The mortgage did not in terms give the mortgagee the right to take possession of the property on default, and could only have been foreclosed by suit. Held, that the action of the referee was proper, and that the mortgagee was entitled to the proceeds only after deduction of the costs of sale and the commissions of the referee and trustee.

In Bankruptcy. On review of action of referee.

B. C. Bellinger, for M. Hornik & Co.

BRAWLEY, District Judge. The petition of M. Hornik sets forth that he is a creditor of the above-named bankrupt, holding a certain bill of sale or chattel mortgage, upon which at the time of adjudication there was due $961.37; that, upon learning of the adjudication, he filed with the referee his petition, praying that the goods and merchandise covered by his mortgage should be surrendered to him, but the referee, "instead of acting upon said petition, finally passed an order authorizing the sale by the trustee, and, in accordance with said order, the trustee sold and delivered all and singular the said goods and merchandise covered by your petitioner's mortgage as above mentioned at public outcry for the sum of $875." He alleges that, if the property had been surrendered to him, he could have had the property sold at an expense not exceeding $8 or $10, and that it is wholly unjust to permit the referee and trustee to be allowed their costs.

Upon the filing of the petition an order was made directing service upon the referee, with direction to report the facts, etc. The referee has filed his report and subsequently a letter, wherein he states that M. Hornik & Co. did file a petition for an order allowing the sale of the merchandise in question, wherein he stated that the security was insufficient to satisfy the mortgage; that thereafter the trustee filed a petition stating that the property had been appraised a $1,585; that he thereupon notified Mr. Bellinger, attorney for Hornik & Co.,

of the trustee's report, and told him that, if he had no objections, he would proceed to give notice of the hearing on the trustee's petition, but Mr. Bellinger did not file any objection thereto, after due notice, and that he thereupon made an order in accordance with the trustee's petition, and the stock of merchandise was sold realizing the sum of $875, and the referee thereupon made an order directing that the fund be disbursed as follows: To M. Hornik & Co. $808.75; advertising sale and printing notices $5; trustee's commissions $45; referee's commissions $8.75.

The question for determination is whether or not these costs and expenses of administration shall be allowed out of the fund. The bankruptcy act (Act July 1, 1898, c. 541, 3 Stat. 563 [U. S. Comp. St. 1901, p. 3448]), provides (section 64, subd. 5) for the payment of the costs of administration, and it is not disputed that the commissions charged by the trustee and the referee are such as are allowed by the bankrupt act; the only question being whether M. Hornik & Co. was authorized to take possession of the stock of merchandise belonging to the bankrupt and dispose of it at his own pleasure. The instrument under which Hornik claims is a rather peculiar one. After providing that Hornik should sell and ship to Baughman merchandise to the limit of $1,000, and that the latter should pay on the Monday of each week at least 7 per cent. of the amount due, the instrument provides as follows:

"And it is hereby agreed that my entire stock of goods, wares, merchandise, store fixtures, etc., now in my store at Wagners, S. C., together with the goods this day purchased and those which may be hereafter purchased and placed in my said store or in any other building appurtenant, are hereby pledged, bargained, and transferred to the said M. Hornik & Co. as security to guarantee my honesty, and that I will faithfully deal with them and will perform every obligation hereby assumed, and it is distinctly understood and agreed that should I neglect to make any payment herein referred to, or, if I should attempt to dispose of the goods or any part thereof other than in the regular course of retail trade, or to do any other act reasonably leading to the suspicion that I intend to avoid making payment or otherwise defraud the said M. Hornik & Co., then immediately upon the happening of either or any of the said events the whole amount owing by me to the said M. Hornik & Co. shall immediately become due and payable, and I hereby agree to pay the same on demand of the said Hornik & Co."

There is no provision that Hornik & Co. should be entitled to take possession of said stock of merchandise. The said stock is in terms pledged "as security to guarantee my honesty." It appears from the report of the referee that the stock of merchandise was appraised at $1,585. Hornik's claim amounted to less than $1,000. In these circumstances it seems to me to have been necessary in the interest of the creditors of the bankrupt that the mortgage should be foreclosed in some court of competent jurisdiction, and it appears from the referee's statement that after the filing of the petition by the trustee notice was given to Mr. Bellinger, attorney for Hornik & Co., for the hearing on the trustee's petition, and that, Mr. Bellinger "not taking any objection, after due notice" the order of sale was made upon the trustee's petition. If it had been Mr. Bellinger's desire to take proceedings for the enforcement of his lien in another forum where the costs of administration would have been less expensive, if such there

be, he should have taken steps to review the action of the referee after he had notice that the referee was proceeding to administer the estate of the bankrupt in bankruptcy.

Loveland, in his work on Bankruptcy (section 267 [3d Ed.]) says:

"In the distribution of an estate a secured creditor as a mortgagee or lienholder is entitled to be paid in full or to the extent of the amount realized from the funds derived from the sale of the property which is subject to the specific lien or security, less expenses of foreclosing the lien, including commissions of referee and trustee."

The order of the referee deducting the expenses of administration is confirmed, and the petition for review dismissed.