## RUBENSTEIN v. NOURSE.
### No. 9717.

Circuit Court of Appeals, Eighth Circuit.
April 16, 1934.

Irl B. Rosenblum, of St. Louis, Mo. (Louis Mayer, of St. Louis, Mo., on the brief), for appellant.

R. R. Brewster, of Kansas City, Mo. (R. R. Brewster, Jr., of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order of the lower court approving and confirming an or-

der of the referee in bankruptcy with reference to the allowance of a claim filed by appellant based on two promissory notes as follows:

(1) Promissory note for $15,153.60 dated October 15, 1930, executed by the Arrow Pipe Line Company, payable to the order of the United Construction & Engineering Company one year after date, with interest at 7 per cent. per annum from date, payable at "the office of the * * * St. Louis, Mo." The note was indorsed by the United Construction & Engineering Company and by the General Utilities Company, and was given as the purchase price of certain pipe. Before the maturity of the note, it was purchased by appellant for value and in the due course of business. The note contained provision that if it should be placed in the hands of an attorney for collection, there should be paid as attorney fees the sum of 10 per cent. of the balance, including interest due on the note. The note was secured by a mortgage on certain pipe which had been delivered f. o. b. cars Council Grove, Kan., and Helmick, Kan., freight prepaid, a certain right of way for the laying of pipe line in Morris county, Kan., and "all appurtenances or equipment attached to or which may hereafter be attached to or become a part of said pipe line, and also any and all additions, improvements and substitutions." This mortgage, executed by the Arrow Pipe Line Company, bore even date with the note, and was executed by the president and secretary of said Company. Thereafter, and on November 8, 1930, this mortgage was acknowledged by the president of the Arrow Pipe Line Company in Jackson county, Mo. The certificate of acknowledgment recites that the Arrow Pipe Line Company is "a corporation organized and existing under the laws of the State of Delaware." The mortgage was placed of record in Morris county, Kan., on December 15, 1930.

(2) Promissory note for $9,832.50, dated April 9, 1931, executed and delivered by the Arrow Oil & Gas Company, payable on demand to the order of the United Construction & Engineering Company, with interest from date at 7 per cent. per annum prior to maturity, and at 8 per cent. after maturity. This note contained provision that if it should not be paid at maturity, and should be placed in the hands of an attorney for collection, the maker promised to pay as attorney fees for collection, 10 per cent. additional on the full amount due thereon. The note was indorsed by the payee, the United Construction & Engineering Company, and by the General Utilities Company, bankrupt herein. This note had attached thereto a pledge or collateral security agreement executed as a part of the note, which agreement recited: "As collateral security for the payment of the above note and for the payment of any other liability and demands of any kind of the holder hereof now existing or which may hereafter arise, whether created directly or acquired by assignment, whether absolute or contingent, the undersigned does hereby assign, pledge and deliver the following property: Oil and gas leases as per schedule attached."

The oil and gas leases described in the schedule attached to the note were, with the pledge agreement, duly delivered to the pledgee. This note, before its maturity, was acquired by the appellant for value and in the due course of business.

Both notes were, subsequent to their maturity, and before the indorser, General Utilities Company, went into bankruptcy, placed in the hands of an attorney in the city of St. Louis, Mo., for collection.

In the course of the bankruptcy proceedings, a sale of the property of the bankrupt, including the property subject to the mortgage securing note No. 1, was made, free and clear of liens, for an amount in excess of the total lien claims.

The referee held that appellant was entitled to a secured claim as to note No. 1, in the amount of the claim and interest, but was not entitled to the attorney fees of 10 per cent., and further that there should be assessed and charged against claimant a proportionate share of the cost and expense of the administration of said bankrupt estate in the sum of $2,601.70; and as to note No. 2, the referee allowed the full amount of the claim as to principal, interest, and 10 per cent. attorney fees thereon, but denied the allowance of this claim as a secured claim. The lower court on petition for review affirmed the order of the referee.

Under a statute of Kansas, a provision for attorney fees in a note or mortgage is void. Rev. St. Kan. 1923, 67—312. Under the laws of Missouri, on the other hand, such a provision is valid and enforceable. American Savings Bank v. Sutton (Mo. App.) 204 S. W. 572.

The referee was of the view that note No. 1 was a Kansas contract, and hence, claimant was not entitled to include in his claim on this note the amount of stipulated attorney fees, while appellant contends that this note was a Missouri contract, and, hence, the provision for attorney fees was valid.

The maker of the note is a Delaware corporation, and it is recited in the mortgage that it is authorized "to transact business in the State of Kansas, with its chief or principal office in the City of Herington, in the State of Kansas." The mortgage also recites that the mortgagee, United Construction & Engineering Company, is a Delaware corporation, authorized "to transact business in the State of Kansas, with its chief or principal office in Herington, Kansas." The note bears no evidence on its face as to where it was executed, but is "payable at the office of the * * *, St. Louis, Mo." There is no evidence as to where the note was actually executed and delivered. The mortgage securing the note was on certain pipe, a certain right of way in Morris county, Kan., definitely described in the mortgage, and "all appurtenances or equipment attached to or which may hereafter be attached to or become a part of said pipe line, etc."

It is clear that the property on which a lien was created by this mortgage was situate in Kansas. The mortgage was recorded in Kansas. It is, therefore, necessary first to determine to what extent this note and mortgage created a lien on this Kansas property. As has been observed, under the Kansas statute the provision for payment of attorney fees was void. The Supreme Court of Kansas, in Young v. Nave, 135 Kan. 23, 10 P.(2d) 23, has held that such a provision in a note is contrary to the public policy of Kansas, and will not be enforced by the courts of that state, even where the contract is conceded to be the contract of another state and there valid. Appellant, therefore, acquired no lien on the Kansas property for the amount of the attorney fees. When the property was sold clear of liens, the lien which appellant had on the property attached to the proceeds. The bankruptcy court sitting in Missouri had jurisdiction to order a sale of the Kansas property (Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645), and on the consummation of the sale the lien was transferred to the proceeds which became substituted for the property, and subject to the same lien as existed against it. Van Huffel v. Harkelrode, 284 U. S. 225, 52 S. Ct. 115, 76 L. Ed. 256; In re Rochford (C. C. A. 8) 124 F. 182; In re Kohl-Hepp Brick Co. (C. C. A. 2) 176 F. 340; Fierman v. Seward Natl. Bank (C. C. A. 2) 37 F.(2d) 11. The bankruptcy court in exercising its jurisdiction to sell the mortgaged property located in another state, free from liens, substituted its procedure for the procedure that otherwise might have been available to the lienholder. Substantive rights of the lienholder were neither curtailed nor enlarged. In re Zehner (D. C.) 193 F. 787; In re Jersey Island Packing Co. (C. C. A. 9) 138 F. 625, 2 L. R. A. (N. S.) 560; In re Williams (C. C. A. 9) 156 F. 934.

■■ The question here is not whether in an action on the debt alone the Missouri law would control as to the legality of the provisions for attorney fees, but the nature and extent of the lien on the property. As respects this lien, the rights of the parties in the security or its proceeds, and the rights of appellant, must be determined by the law of Kansas. Each state has a right to determine for itself the extent of the rights conferred by a mortgage. Clark v. Huckaby (C. C. A. 8) 28 F.(2d) 154, 67 A. L. R. 1456. In other words, the validity and effect of a mortgage lien are to be determined by the laws of the state in which the property on which a lien is asserted is situated. Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003; Green v. Van Buskirk, 72 U. S. (5 Wall.) 307, 18 L. Ed. 599; New York Trust Co. v. Island Oil & Transport Co. (C. C. A. 2) 33 F.(2d) 104, 79 A. L. R. 1007; In re Circle Trading Corp. (C. C. A. 2) 26 F.(2d) 193; Steckel v. Swift & Co. (Mo. App.) 56 S.W.(2d) 806; Goldberg v. Brule Timber Co., 140 Minn. 335, 168 N. W. 22.

Manifestly, appellant could acquire no greater rights in the property after it had been converted into money than he had acquired by his mortgage, and this is true regardless of whether the contract was executed in Missouri or Kansas.

■ It appears that the mortgaged property was sold for more than sufficient to pay in full all liens, leaving a surplus remaining in the general estate of the bankrupt. Notwithstanding this, however, the referee deducted from the amount of appellant's claim the sum of $2,601.70, on the theory that this amount was deductible as a proportionate share of the cost of administration, sale, taxes, and preservation of the property. We think this deduction was unwarranted. The lower court, in confirming an order of the referee selling the assets of the bankrupt, referring to the objections of certain secured creditors, said: "They are assured payment in full for their claims when allowed and until they have been paid in full the title to all the assets of the bankrupt remains in the trustee and their liens are not jeopardized nor the properties back of them lessened in value."

We are of the view that it was error to assess against appellant these estimated costs of administration. In re Harralson (C. C. A. 8) 179 F. 490, 29 L. R. A. (N. S.) 737; C. B. Norton Jewelry Co. v. Hinds (C. C. A. 8) 245 F. 341; Mills v. Virginia-Carolina Lumber Co. (C. C. A. 4) 164 F. 168, 21 L. R. A. (N. S.) 901; Virginia Securities Corp. v. Patrick Orchards, Inc. (C. C. A. 4) 20 F. (2d) 78.

■ As to note No. 2, it is contended that it was error to refuse to allow this claim as a secured one. In denying this right, the referee found that these leases were executed by the owner of the land to individuals by whom they were assigned to the Arrow Oil & Gas Company, which company duly recorded them and completed the vesting of title in that company. Without further assignment they were physically delivered, with the note, by the Arrow Oil & Gas Company. The schedule attached to the note recited the names of the makers and the legal description of the properties. The referee was of the view that these leases were an interest in the real estate, and, under the Missouri statutes, were ineffectual because not acknowledged and recorded. We are not clear what the referee had in mind, because he specifically found that the leases had been duly recorded, and hence, we assume that they had also been duly acknowledged, as otherwise they could not have been "duly recorded." We can only surmise that the referee had in mind that the assignments of the leases had not been acknowledged and recorded.

It is the contention of the appellant that these instruments created no estate in real property, but were only licenses or options to enter upon the land described in the leases for the designated period. Sturdivant Bank v. Schade (C. C. A. 8) 195 F. 188, 195; Mexican Gulf Oil Co. v. Compania Transcontinental De Petroleo (D. C.) 281 F. 148; Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo. 414, 125 S. W. 486; Hitson v. Gilman (Tex. Civ. App.) 220 S. W. 140; Duff v. Keaton, 33 Okl. 92, 124 P. 291, 295, 42 L. R. A. (N. S.) 472; Dewey v. Bowman, 8 Cal. 145; Stahl v. Illinois Oil Co., 45 Ind. App. 211, 90 N. E. 632; Gulf Refining Co. v. Hayne, 138 La. 555, 70 So. 509, L. R. A. 1916D, 1147, Ann. Cas. 1917D, 130.

In Sturdivant Bank v. Schade, supra, this court said: "The pledge of the collateral notes to the bank in equity carried with them whatever interest the pledgor had in the trust deed which secured their payment. This, together with the delivery of the deed of trust to the bank, constituted an equitable assignment or transfer thereof."

Speaking of the nature of an oil and gas lease, the Supreme Court of Oklahoma, in Duff v. Keaton, supra, said: "The rule seems to be settled in this jurisdiction that the grant of an exclusive privilege to go upon land for the purpose of exploring for oil or gas, the grantor to receive part of the oil or gas mined, does not vest in the grantee any estate in the land or oil or gas, but is merely a license or grant."

We think that the transfer of the note carried with it as an incident thereto these oil and gas leases; that the assignments were not such as were required to be acknowledged and recorded, nor, indeed, were they required to be in writing.

■ It is finally urged that the delivery of these leases was invalid because without corporate authority of the Arrow Oil & Gas Company. The referee found that: "The board of directors of the Arrow Oil and Gas Company did not formally agree to the execution of the instruments at a directors' meeting. It does appear that all of the directors had knowledge of the delivery of the lease instruments."

Although there is no affirmative proof that the assignment of these leases as collateral was authorized by resolution of the directors, it does appear that after the leases were deposited as collateral, the board of directors discussed the deposit, and no objection was raised to the assignment by any of the directors. The corporation received the consideration for the assignment of the note and leases with knowledge that the leases had been turned over as security to the note, and it cannot take advantage of these informalities which do not go to the substance of the transaction. Penney v. Lynn, 58 Minn. 371, 59 N. W. 1043; Galbraith v. First Natl. Bank (C. C. A. 8) 221 F. 386.

We conclude that the court erred in not allowing appellant's claim based upon note No. 2 as a secured one.

The order appealed from is accordingly modified, and the cause is remanded, with directions to the lower court to so modify said order as to comply with the views expressed herein. Appellant will recover his costs in this court.