**TAWNEY v. CLEMSON (two cases).**

Nos. 3942, 3978.

Circuit Court of Appeals, Fourth Circuit.

Jan. 11, 1936.

ceeds of the sale of the mortgaged property free from liens by a trustee in bankruptcy. The appeal in No. 3942 was allowed under section 24b of the Bankruptcy Act (11 U.S.C.A. § 47 (b) upon the petition of James T. Tawney to superintend and revise proceedings of the District Court in the matter of Joseph D. Wimert and Agnes M. Wimert, his wife, in bankruptcy. Tawney was the mortgagee in two chattel mortgages given by the bankrupts to secure the payment of two promissory notes. Each mortgage covered certain stock, farm machinery, furniture, etc., on the farm of the bankrupts in Carroll county, Md., and each provided that in case of default in the payment of the mortgage debt or interest, the mortgagee or his attorney were empowered to sell the mortgaged property and devote the proceeds (1) to the payment of all expenses incident to the sale, inclusive of such counsel fees as the mortgagee or his attorney might incur in the foreclosure of the mortgage, and also such commissions as are allowed to trustees for the sale of real estate in equity, and (2) to the payment of all monies owing under the mortgage.

The first of these chattel mortgages was executed on May 29, 1931, to secure a debt of $500 evidenced by a promissory note of even date of the bankrupts, payable to Tawney six months after date, with interest at 6 per cent. per annum. The note provided that if it was not paid at maturity, the makers would pay all costs of collection, including 10 per cent. attorney's fees; and the makers also authorized any attorney after the maturity of the note to confess judgment in their names in favor of the payee or holder thereof for the amount due on the note with interest, "and said 10 per cent. additional as counsel fee," with costs of suit. The second chattel mortgage was executed on September 13, 1933, to secure the payment of the additional sum of $150 evidenced by a promissory note of even date, payable one year after date, with interest at 6 per cent. per annum. This note also provided that if it should be placed in the hands of an attorney for collection, the makers would pay 15 per cent. of the amount due thereunder as attorney's fee; and the makers named an attorney and authorized him to confess judgment against them in any court having jurisdiction, and agreed to pay him 15 per cent. of the amount due thereunder as a fee for confessing judgment, the fee in either case to become a part of the indebted-

On the former appeal, order reversed and case remanded, and the latter appeal dismissed.

J. G. Knight, of Westminster, Md., for appellant.

Theodore F. Brown, of Westminster, Md., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

These cases involve the allowances made by a referee in bankruptcy to the holder of chattel mortgages out of the pro-

302

ness and to be in addition to the amount due under the note.

On September 6, 1934, the makers of the note filed their separate petitions in bankruptcy and were adjudicated bankrupts, and shortly thereafter the cases were consolidated. The note of $500 was then in default and the note for $150 became in default on September 13, 1934. On September 24, 1934, the mortgagee filed his claim against the bankrupt estate for the face amounts of the notes so secured by mortgage, with interest and counsel fees of 10 per cent. and 15 per cent., respectively, as specified in the notes. On September 26, 1934, the District Court passed an order authorizing the trustee to sell the personal property of the bankrupts at public auction, subject to the liens thereon. Thereafter, on September 28, 1934, the attorney for the mortgagee and the trustee in bankruptcy entered into an agreement wherein it was provided in effect that the sale of the property should be made by the trustee in bankruptcy, free from liens, and that the proceeds from the sale should be reported item by item, so that the lien of the mortgagee might be asserted against the proceeds. The trustee in bankruptcy on his part agreed that he would not contest the mortgage claim.

■ The referee in his final account allowed the amount of each mortgage debt, with interest, but did not allow the attorneys' fees for collection authorized by the notes, being of the opinion that these fees are payable only in case of entry of judgment by confession on the notes. The propriety of this disallowance, which was sustained by the District Judge, is the first question for consideration. It will be noticed that the attorneys' fees in question are those provided in the notes to pay the cost of collection, and not the attorneys' fees mentioned in the mortgages as payable in case of the foreclosure thereof. The latter would not be payable in a case of this kind because no foreclosure of the mortgage was made. Smith v. Mortgage & Debenture Co. (C.C.A.) 101 F. 956; Gugel v. New Orleans Nat. Bank (C.C.A.) 239 F. 676; Citizens Nat. Bank v. Waugh (C.C.A.) 78 F.(2d) 325. We are called on to decide whether the fees for collection provided in the notes are payable as part of the secured debts, when the notes are placed in the hands of an attorney for collection after an adjudication in bankruptcy has taken place, for it does not appear

that the attorney of the mortgagee was employed or rendered any services with reference to the notes before the adjudication in bankruptcy took place. It does appear, however, that after the adjudication took place, he represented the mortgagee in the execution of the contract whereby it was agreed that the chattels should be sold free from liens, and not subject to liens, as previously ordered by the court, an arrangement of advantage to both sides, and after the sale he presented the objection of the mortgagee to the referee's account.

The Supreme Court decided a similar question in bankruptcy in Security Mortgage Company v. Powers, 278 U.S. 149, 49 S.Ct. 84, 85, 73 L.Ed. 236, wherein was considered an allowance for attorneys' fees provided for in mortgage notes payable with interest and costs of collection "including 10 per cent. as attorney's fees, if collected by law or through an attorney at law." Prior to the adjudication in bankruptcy, the bankrupt had acquired the mortgaged property and had assumed the mortgage indebtedness, but there had been no default before adjudication. After adjudication, leave to sell the property free from the lien was granted after notice to the mortgagee who made no opposition. The property was sold and purchased by the mortgagee who asked to be allowed as a credit 10 per cent. of the indebtedness as an attorney's fee. The law of Georgia, where the mortgage was made, provided that obligations in a note to pay attorneys' fees should be void unless the debtor should fail to pay the debt before the return day of the court to which suits should be brought for collection, provided that the holder should notify the defendant in writing ten days before suit of his intention to bring suit. Such a suit was brought by the mortgagee against the original mortgagor before the leave to sell was granted; but these proceedings in the state court were relied upon merely to show compliance with the statutory prerequisite for the enforcement of the contract to pay the fees.

The court held that the validity of the lien for the attorneys' fees, and the construction of the contract therefor, presented questions of state law, and that whether the liability was enforceable against the proceeds of the sale raised a federal question under the bankruptcy law. After considering the state decisions, the court reached the conclusion that under the state

law the collection of the notes through the uncontested sale in bankruptcy should be deemed a collection by law or through an attorney within the meaning of the contract. It overruled the contention of the trustee that the liability was contingent at the time of the adjudication, since at that time there had not been any default, and that therefore the claim was not provable under section 63 of the Bankruptcy Act (11 U.S.C.A. § 103). It held that the lien was not inchoate at the time of the adjudication, but had already become perfect when the note and mortgage were given, and that the lien was enforceable although the happening of the event by which the contingent liability became absolute occurred after the adjudication. It also held that the contingent obligation to pay the attorneys' fees was a part of the original transaction, and that the consideration was the amount of the mortgage loan, and hence the allowance was not barred by section 67d of the Bankruptcy Act (11 U.S.C.A. § 107 (d) on the ground that the liability for the fees did not become absolute until after the adjudication.

We find nothing in the Maryland decisions that have come to our attention in conflict with the mortgagee's contention in the pending case. In Maus v. McKellip, 38 Md. 231, the Court of Appeals of Maryland, in considering a mortgage wherein the mortgagor covenanted to pay the mortgage debt and all counsel fees that the mortgagee might be put to in collecting the debt, overruled an objection of the assignees in bankruptcy of the mortgagor and held that counsel fees should be allowed in the distribution of the proceeds of the mortgaged property sold by a trustee appointed by a foreclosure decree in the state court; but that a fee for successfully resisting an effort to secure an injunction from the bankruptcy court to restrain the foreclosure sale in the state court should not be allowed since it was an expense not necessarily incurred in the collection of the debt. In Gaither v. Tolson, 84 Md. 637, 36 A. 449, the mortgage under consideration contained a similar covenant as to attorney's fees, and it was held that such a fee was payable to an attorney in whose hands the mortgage was placed for foreclosure, and that in addition commissions were payable under another clause of the mortgage to the trustee who conducted the foreclosure sale, and that it made no difference that the attorney and

the trustee were the same person. In Bowie v. Hall, 69 Md. 433, 16 A. 64, 1 L. R.A. 546, 9 Am.St.Rep. 433, it was held that a stipulation in a promissory note in case of its nonpayment at maturity to pay the costs of collecting the same, including an attorney's commission, was valid and enforceable since it violated no principle of law or public policy; and in Webster v. People's Loan, etc., Bank, 160 Md. 57, 152 A. 815, the court upheld a provision in a collateral promissory note whereby the holder consented to the entry of judgment for the amount of any deficiency in the sale of collateral including 10 per cent. attorneys' fees for collection, and cited all of the above cases with approval. As to validity of provision in promissory note for the payment of attorney's fee, see Citizen Nat. Bank v. Waugh (C.C.A.) 78 F.(2d) 325.

We think it is clear from these authorities that a provision for an attorney's fee for collection in a promissory note secured by chattel mortgage is valid under the Maryland law, and that the mortgagee has a lien on the mortgaged property for services rendered not exceeding the amount agreed upon. The notes in the pending case clearly contemplated the payment of attorney's fees incurred as a cost of collection, whether or not a consent judgment should be entered; for each note provided (1) that if it should not be paid at maturity, the makers would pay the cost of collection, including the attorneys' fees, and (2) authorized any attorney to confess judgment for the amount due on the note with interest and 10 per cent. additional as counsel fee. We think that these two provisions are independent of each other, and that the right to an attorney's fee as a cost of collection arose whether or not judgment should be confessed under the second provision referred to. It follows that the referee was not warranted in disallowing the attorneys' fees in his account and the exception to the account under consideration should have been sustained.

■■■ The mortgagee also excepted to the account because the referee charged against the proceeds of the sale of the mortgaged property a share of the expenses of the sale and of the commissions of the referee and trustee in the proportion which the proceeds of the mortgaged property bore to the proceeds of the property that was free from the liens. General ex-

penses of administration, such as amounts due the referee for notices, filing of claims, and amounts due attorneys for services rendered the estate, were not pro rated but were charged against the general fund. The mortgaged property sold for enough to pay the mortgage debts, but when the pro rata share of the expenses and commissions were deducted, there was a balance remaining due on the mortgages which was allowed to participate in the general estate only as an unsecured debt.

This objection was properly overruled. The power of the bankruptcy court to sell the property of a bankrupt free from liens, although not conferred in terms by the Bankruptcy Act, is well established. Van Huffel v. Harkelode, 284 U.S. 225, 52 S. Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453. The power should of course not be exercised unless it is reasonably clear that the property is worth more than the encumbrances and expenses of sale. In the pending case, there is no suggestion of impropriety in the action of the court in ordering the sale. It first ordered that the sale be made subject to liens, and it was only after an agreement had been executed by the trustee and attorney for the mortgagee that the property was sold free from liens. By this agreement the mortgagee in effect joined the trustee in making the sale free from liens under the supervision and authority of the court of bankruptcy; and the case must be decided on this basis. It was held by this court in Mills v. Virginia-Carolina Lumber Co., 164 F. 168, 171, 21 L.R.A.(N. S). 901, that when a secured creditor comes into a bankruptcy court to establish a debt secured by a lien on specific property, he should not therefore be charged with the cost of the general administration of the estate so as to reduce his security. But as this court pointed out In re Columbia Cotton Oil & Provision Corp., 210 F. 824, 826, this rule applies when the security is sold by the trustee against the lienholder's consent or without his knowledge. When the sale is made, as in the case at bar, with the lienholder's consent, it may fairly be inferred that it is made at least in part for his benefit; and there is nothing in the Bankruptcy Act and no equitable consideration which excuses a lienor, who seeks the aid of the bankruptcy court, from paying such part of the costs of the sale and of the expenses of administration as is attributable to the sale of the mortgaged property and the distribution of its proceeds. He is saved the costs of sale and the commissions or fees on the proceeds which would otherwise be incurred in foreclosure proceedings in the state court; and he is properly chargeable with the corresponding expenses of the sale in the federal court undertaken at his request or with his consent in conformity with the Bankruptcy Act.

In the decisions of this court in Columbia Cotton Oil & Provision Co., 210 F. 824, and Virginia Securities Corp. v. Patrick Orchards, 20 F.(2d) 78, where the commissions of referee and trustee were charged against the proceeds of the mortgaged property, the sales were made at the request or with the consent of the mortgagee, and there was little or no other general estate. In the present case, there was sufficient money in the general fund to have paid the commissions of these officials; but we think that this circumstance is immaterial. Under section 48 of the Bankruptcy Act (11 U.S.C.A. § 76), it is expressly provided that the commissions of the trustee shall be calculated upon the moneys disbursed by him to any person, including lienholders. The result is that the expenses of the administration of the estate were increased in the pending case by the additional amounts allowed by law to the referee and trustee on the proceeds of the sale disbursed; and the lienholder must be held to have contemplated this added expense when he agreed to the sale under the supervision of the bankruptcy court. The equitable considerations which arise under these or kindred circumstances have been discussed by the courts in the following cases: In re Torchia (C.C.A.) 188 F. 207; In re J. C. Wilson & Co. (D. C.) 252 F. 631, 656; In re Rotary Tire & Rubber Co. (C.C.A.) 2 F.(2d) 364; In re Estes (D.C.) 2 F.Supp. 576; In re Glenn (D.C.) 2 F.Supp. 579; In re Baughman (D.C.) 163 F. 669; In re Vulcan Foundry & Machine Co. (C.C.A.) 180 F. 671; In re Stewart (D.C.) 193 F. 791. It is true that in other cases where sales were made seemingly with the consent of the lienholder, commissions to the referee and trustee have not been allowed. See Gugel v. New Orleans Nat. Bank (C.C.A.) 239 F. 676; In re Myers (C.C.A.) 24 F.(2d) 349; In re Utt (C.C.A.) 105 F. 754; In re Williams' Estate (C.C.A.) 156 F. 934. But we do not think the ruling in these cases should be applied to the facts in the case at bar. In prorating the commissions, it

should be borne in mind that the lienor is chargeable only with the amount by which the commissions are increased by the disbursement of the proceeds of the sale of the encumbered property, and not with a pro rata share of the commissions at larger percentages allowed by section 48 of the act on the sums first disbursed.

Another exception was taken to the referee's account because it allowed a dividend on the balance remaining due on the claim of the Farmers & Merchants Bank of Westminster after the foreclosure of the mortgage held by it on the real estate of the bankrupts. Default was made in the payment of the mortgage debt and the bank thereupon assigned the mortgage to its attorney for the purpose of foreclosure, which was carried through in the state court, leaving a portion of the debt unsatisfied, upon which the referee allowed a dividend as upon an unsecured claim. This objection was also overruled by the District Court. The basis of the objection seems to be that the assignment of the mortgage divested the bank of title to the indebtedness so that it had no standing to file a claim for the deficiency against the bankrupt estate, but it is undisputed that the assignment of the mortgage was made by the bank to its attorney for the purpose of foreclosure. For this purpose the attorney was merely the bank's agent and the bank retained the ownership of the claim and was entitled to a dividend thereon. See the similar practice in Gaither v. Tolson, 84 Md. 637, 36 A. 449.

Since the case must be remanded for the restatement of the referee's account, we do not attempt to pass on other objections which are not fully discussed in the briefs; but we may add that we do not understand why the special fund was charged with any part of the taxes in the personal property, and that in view of this decision the costs attendant upon the hearing of the exceptions in the District Court should not be charged against the fund, as seems to have been done. These matters should have further consideration in the District Court. See Dayton v. Stanard, 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190; Bankr. Act § 64a, 11 U.S.C.A. § 104 (a).

In case No. 3942 the order of the court overruling the exceptions to the referee's account is reversed, and the case remanded for further proceedings in conformity herewith. The appeal in case No.

3978 under section 24a of the Bankruptcy Act (11 U.S.C.A. § 47 (a) is dismissed.

Case No. 3942 reversed.

Case No. 3978 dismissed.