RECONSTRUCTION FINANCE CORPORATION v. COHEN et al.

In re BURCH.

No. 3855.

United States Court of Appeals Tenth Circuit.

Jan. 17, 1950.

774

Rufus Burrus, Independence, Mo. (James L. Dougherty, Washington, D. C., on the brief), for appellant.

H. W. Goodwin, Wichita, Kan. (Harold A. Zelinkoff, Wichita, Kan., on the brief), for appellees.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The question presented for determination is whether in a bankruptcy proceeding where one creditor holds a mortgage covering property the value of which is substantially more than the secured debt, and where parts of the mortgaged property are sold free and clear of debt with the consent of the secured creditor, a deduction of three per cent may be made from the amount due the secured creditor to be covered into the referee's salary fund and the referee's expense fund, resulting in payment to the secured creditor of only ninety-seven per cent of its debt, or whether the payment to the referee's fund is to be made out of funds belonging to the general estate of the bankrupt.

Section 40, sub. c(2) of the Bankruptcy Act, as amended, 60 Stat. 323, 327, 11 U.S.C.A. § 68, sub. c(2), provides in substance that additional fees for the referee's salary fund and for the referee's expense fund shall be charged, in accordance with the schedules fixed by the Conference of Senior Circuit Judges, against each bankruptcy estate wholly or partially liquidated in a bankruptcy proceeding, and be computed upon the net proceeds realized. Pursuant to the authority conferred by the statute, the Conference of Senior Circuit Judges, at its session held in September, 1947, provided for a charge of one and one-half per cent on net realization in straight bankruptcy cases for the referee's salary fund, and a like amount for the referee's expense fund, and interpreted the words "net proceeds realized" in case of sale or liquidation to mean the amount of money coming into the estate as an asset thereof.

W. A. Burch executed a promissory note payable to The Riverview State Bank of Kansas City, Kansas, and a chattel mortgage securing the note. The note was for the principal sum of $101,525, with interest. The chattel mortgage covered trucks, trac-tors, trailers, service cars, shop and garage equipment, certificates of public convenience and necessity, licenses or permits, and other property. The bank endorsed the note and assigned the mortgage to the Reconstruction Finance Corporation. Burch filed in the United States Court for Kansas his petition for an arrangement under Chapter XI of the Bankruptcy Act, as amended, 11 U.S.C.A. § 701 et seq.; and by order of the court, he was continued in possession of the property. About five months after the filing of the petition for an arrangement, Burch was adjudicated a bankrupt, trustees were selected, and they took possession of the property. At the time of the filing of the petition, the debt due the Reconstruction Finance Corporation amounted to $80,525, and the value of the property covered by the chattel mortgage was approximately $130,000. With the consent of the Reconstruction Finance Corporation, the debtor and later the trustees in bankruptcy from time to time sold parts of the mortgaged property and the proceeds from the sales were applied on the secured debt. The payments thus made reduced the secured debt to $23,944.35. At that juncture, the Reconstruction Finance Corporation filed in the proceeding an application for the delivery to it of the balance of the mortgaged property in order that the mortgage might be foreclosed upon it. The application was denied. Thereafter, other sales of parts of the mortgaged property were made and the proceeds paid to the Reconstruction Finance Corporation which reduced the amount of its note to $1,496.10, with interest amounting to $1,961.84.

The referee entered an order in the proceeding directing the trustees to pay to the Reconstruction Finance Corporation the amount due on the mortgage, including interest, less three per cent of the net proceeds realized from the sale of the mortgaged property, and further directing the trustees to pay the three per cent so deducted to the clerk of the court, to be ultimately covered into the referee's salary fund and the referee's expense fund. The Reconstruction Finance Corporation sought review of the order. The court denied the

petition for review, and the Reconstruction Finance Corporation appealed.

■ It is the contention of appellant that inasmuch as the value of the mortgaged property greatly exceeded the amount of the secured debt, the sales of property were for the benefit of the general estate; that appellant is entitled to payment in full of its secured debt, unimpaired by the bankruptcy liquidation; and that it should not be required to contribute to the referee's funds. The proceeds of the sales of property were an asset of the estate to be taken into consideration in computing the amount to be charged against the estate and paid into the referee's funds. But section 40, sub. c(2) of the Bankruptcy Act, supra, authorizing additional fees for the referee's funds, does not concern itself with the question whether the fees in a case of this kind are paid out of funds available for the payment of a secured debt or from funds belonging to the general estate of the bankrupt. The exactions of the statute are satisfied when the full amount of the fees is charged against the estate and made available for coverage into the referee's funds, whether taken out of funds payable to the secured creditor or from funds belonging to the general estate.

■ A bankruptcy court may order payment of expenses incurred wholly for the benefit of mortgaged property out of the proceeds of the sale of such property, even though it results in the secured debt not being paid in full. Bonner v. Suiter, 10 Cir., 112 F.2d 912, certiorari denied 311 U.S. 677, 61 S.Ct. 44, 85 L.Ed. 436. In like manner, where there is no general estate administrative expenses may be paid out of the fund derived from the sale of encumbered property. But where an equity exists in mortgaged property over and above the mortgage debt thus creating a general estate, or where a general estate exists otherwise, and the mortgaged property is sold free and clear of debts, general administrative expenses of the bankruptcy court are to be paid out of the general estate rather than from the fund due the secured creditor. In re Williams' Estate, 9 Cir., 156 F. 934; Mills v. Virginia-Carolina Lumber Co., 4 Cir., 164 F. 168, 21 L.R.A.,N.S., 901; In re Harralson, 8 Cir., 179 F. 490, 29 L.R.A.,N.S., 737; C. B. Norton Jewelry Co. v. Hinds, 8 Cir., 245 F. 341; Virginia Securities Corporation v. Patrick Orchards, 4 Cir., 20 F.2d 78; Rubenstein v. Nourse, 8 Cir., 70 F.2d 482; Byrer v. Bushong, 4 Cir., 108 F.2d 594; In re Prindible, 3 Cir., 115 F.2d 21.

■ The deduction made from the amount due appellant in payment of its secured debt was not for expenses incurred exclusively for the benefit of the mortgaged property. It was not for the payment of expenses necessary for the protection and preservation of the encumbered chattels. It was to be covered into the referee's funds. It was a contribution to funds used in payment of expenses incurred in the general administrative functions of the bankruptcy court. There was an equity of approximately fifty thousand dollars in the mortgaged property over and above the amount of the secured debt. That equity belonged to the general estate. Therefore the sales of property free and clear of debts were as much or more for the benefit of the general estate than for that of the secured creditor. And in such circumstances, the amount to be covered into the referee's funds should come out of the general estate rather than from the amount due the secured creditor. In re Harralson, supra; Virginia Securities Corporation v. Patrick Orchards, supra; Rubenstein v. Nourse, supra.

■ Appellees urge the contention that inasmuch as the sales were made free and clear of lien with the consent of appellant, the deduction from the amount due appellant on its secured debt was authorized. But bankruptcy does not operate to take away the rights of a secured creditor of the bankrupt. The holder of a valid lien upon property belonging to the estate of a bankrupt does not waive any of his rights by coming into a pending bankruptcy proceeding. In re Williams' Estate, supra; Virginia Securities Corporation v. Patrick Orchards, supra; Byrer v. Bushong, supra; In re Prindible, supra. Appellant did not initiate the proceeding in bankruptcy. It consented to the sales and accepted the pro-

ceeds therefrom, but it is not suggested that the sales were prejudicial to the interests of the bankrupt estate. If they were for the best interests of the estate of the bankrupt, appellant was not required to oppose them, or to refuse to consent to them, or to assume a distant and remote position of neutrality in respect to them, or to remain mute relating to them, on pain of being obliged to contribute out of the amount due it to the referee's funds if it gave consent and accepted the proceeds. Byrer v. Bushong, supra.

 In a further effort to uphold the order, appellees argue that appellant used the facilities of the bankruptcy court, the services of the trustees, and the services of their attorneys, in realizing on the sale of the mortgaged property the amount of the secured debt, and that therefore the deduction of three per cent was well-founded. Ordinarily, where the value of encumbered property is less than the amount of the encumbrance upon it, the bankruptcy court should not assume charge of the property and liquidate the liens against it. Unless there is reasonable ground for believing that a surplus will be realized for the benefit of the general estate of the bankrupt, the bankruptcy court should release the encumbered property from the proceeding and thus enable the lienor to foreclose the lien or otherwise realize upon the security. In re Harralson, supra; Federal Land Bank of Baltimore v. Kurtz, 4 Cir., 70 F.2d 46. But where there is a surplus in the encumbered property over and above the encumbrance against it, or where there is reasonable ground for believing that there may be a surplus or equity in the property that would inure to the benefit of the general estate after payment of the encumbrance, the bankruptcy court pursuant to its paramount and exclusive jurisdiction should retain the property in the proceeding and assume charge of the liquidation. Here, the value of the mortgaged property exceeded the amount of the secured debt by approximately fifty thousand dollars. That equity belonged to the general estate. If appellant had sought at the outset to have the property dismissed from the proceeding in order that it might fore-

close the lien in a court of competent jurisdiction or otherwise realize upon the security, it would have been the duty of the bankruptcy court to deny the motion and retain jurisdiction. Union Electric Co. v. Hubbard, 4 Cir., 242 F. 248. There was no course open to appellant except to proceed in the bankruptcy court. And its doing so did not warrant the deduction from the amount due on the secured debt for coverage into the referee's funds. Instead, the payment should be made from the general estate.

The order is reversed and the cause remanded.

MURRAH, Circuit Judge, specially concurring.

I agree that in these circumstances the appellant mortgagee is not chargeable with 3 per cent of the proceeds realized from the sale of the mortgaged property, and that the case must be reversed. But I cannot agree that the appellant should not be charged with what it would have cost him to enforce his remedy in the state forum.

As I read the cases cited in the opinion, they are to the effect that where a mortgagee merely acquiesces in the foreclosure of the mortgaged property, which is sold by the trustee in bankruptcy for an amount in excess of the mortgage, or where the assets of the estate in bankruptcy otherwise exceed the amount of the mortgaged indebtedness, the lienholders are chargeable only with what it would have cost them to enforce their liens outside the bankruptcy proceedings. See Remington on Bankruptcy, 4th Ed., Vol. 6, Sections 2610 and 2613. This rule, in my judgment, comports with equitable principles, and I would apply it here. If the mortgagee here had pursued his remedy in the Kansas courts, he would have undoubtedly recovered the full amount of the mortgage, including court costs. But, concededly, under Kansas law, a mortgagee must pay his own attorneys, even though the note and mortgage provide otherwise.

It follows therefore that in any event, the mortgagee would have been required to pay a reasonable attorney's fee for the foreclosure of the mortgage under appli-

cable Kansas law. In our case, the attorney for the trustee undoubtedly performed valuable services which redounded to the benefit of the mortgagee, and in my judgment, it should be chargeable with reasonable attorney's fee for the same. I would therefore reverse the case with directions to ascertain and charge that amount against the mortgagee.